**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles David Randall,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-15-02605-PHX-JZB<br><br>**ORDER** |

Plaintiff Charles David Randall seeks review of the Social Security Administration Commissioner's decision denying his application for disability benefits under of the Social Security Act. (Doc. 1; Doc. 16.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further proceedings.

**I. Background**

On May 2, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits. (AR[1] 12.) Plaintiff alleged that he became unable to work on April 3, 2012. (*Id*.) Plaintiff's application was initially denied on March 5, 2013, and denied upon reconsideration on August 22, 2013. (*Id*.) Pursuant to Plaintiff's request, a hearing was held on April 8, 2014, before the Administrative Law Judge (ALJ) Thomas Cheffins. (*Id*. at 12.) In a decision dated August 18, 2014, the ALJ ruled Plaintiff is not entitled to disability benefits because he is "not disabled under sections 216(i) and 223(d)

---

[1] Citations to "AR" are to the administrative record.

of the Social Security Act." (*Id*. at 25.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-6.)

Having exhausted the administrative review process, on December 22, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On May 26, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration. (Doc. 16.) On June 27, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 18.)

## II.  Legal Standards

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" ["RFC"] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (AR 25.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: "diabetes mellitus controlled; hypertension controlled; degenerative disc disease of the lumbar and thoracic spine; insomnia; and chronic fatigue." (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 16.)

At step four, the ALJ found that "[Plaintiff] has the [RFC] to perform the full range of light work as defined in 20 CFR 404.1567(b)." (*Id.* at 17.) The ALJ further found that Plaintiff "is capable of performing past relevant work as a golf range attendant and locker room attendant. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 24.) Given that finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act," from the alleged onset date through the date of the ALJ's decision. (*Id.* at 25.)

### III. Analysis

Plaintiff argues that the ALJ's decision is defective for three reasons: (1) the ALJ did not give clear and convincing reasons to reject the opinions of the two treating physicians who identified greater physical limitations than those set forth in the ALJ's RFC finding; (2) the ALJ erred by determining that Plaintiff's insomnia and chronic fatigue were "severe," but then failing to account for those impairments in his RFC finding; and (3) the ALJ failed to take into account Plaintiff's work history in his credibility finding.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ erred in weighing the opinions of the following physicians: (1) Dr. John Bickle, treating physician; and (2) Dr. Julian Grove, treating physician. Below, the Court addresses the ALJ's treatment of these opinions.

### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

### ii. The ALJ did not err in rejecting the opinions of treating physician, Dr. Bickle.

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Plaintiff's treating physician, Dr. Bickle. (Doc. 16 at 9-16.) Dr. Bickle began treating

- 5 -

Plaintiff in October 2007. (AR 412.) From October 2007 through March 2014, Plaintiff saw Dr. Bickle for evaluation and follow-ups for several conditions, including type-2 diabetes, hyperlipidemia, hypertension with elevated blood pressure, chronic lower back pain, elevated liver enzymes, and insomnia. (*Id.* at 302-04, 316, 412.)

On March 26, 2013, Dr. Bickle completed a Physical Medical Source Statement form. (*Id.* at 412-15.) Dr. Bickle opined that: (1) Plaintiff's prognosis was "fair-good"; (2) Plaintiff is capable of handling low stress work; (3) Plaintiff can sit for about four hours in an eight-hour work day; (4) Plaintiff can stand or walk for about four hours in an eight-hour work day; (5) Plaintiff can frequently lift and carry 10 pounds and occasionally lift and carry 20 pounds; (6) Plaintiff must walk every 30 minutes for five minutes; (7) Plaintiff must take an unscheduled break every hour and rest for 15 minutes; (8) Plaintiff can only sit or stand for 20 minutes at one time; (9) Plaintiff would miss four days from work each month; (10) Plaintiff can occasionally twist, stoop, bend, and climb; and (11) Plaintiff is likely to be off task 25% or more of the time. (*Id.*)

On March 27, 2013, just one day later, Dr. Bickle completed a similar Physical Residual Functional Capacity Questionnaire. (*Id.* at 411.) Here, Dr. Bickle opined that: (1) Plaintiff's prognosis was "fair"; (2) Plaintiff has severe back and joint pain, reduced range of motion, and chronic musculoskeletal pain; (3) Plaintiff can only work part time for two to four hours per day; (4) Plaintiff would need a 15 minute break every hour; (5) Plaintiff can sit, stand, and walk between two and three hours each in an eight-hour work day; and (6) Plaintiff would miss four days from work each month. (*Id.*)

Dr. Bickle's opinions were contradicted by the opinions of agency, non-examining physicians, Dr. Lucy Sauer and Dr. Clarence Ballard. (*Id.* at 21-22, 80-81, 96-97.) Therefore, the ALJ could only discount Dr. Bickle's opinions with specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31; *Garrison*, 759 F.3d

at 1015.[2]

The Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for giving minimal weight to Dr. Bickle's opinions. First, the ALJ asserted that Dr. Bickle's functioning assessment opinions were largely based on "subjective reports from [Plaintiff] as to his limitations and functioning." (AR 23); *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."). Specifically, the ALJ noted that at the hearing, Plaintiff explained that the reason Dr. Bickle filed a separate, more restrictive functioning assessment one day after filing the first one was because Plaintiff told Dr. Bickle his assessment was "wrong" and Plaintiff asked for another one based on Plaintiff's subjective opinions. (AR 23, 64.)

In response, Plaintiff argues that even if the ALJ properly rejected Dr. Bickle's second opinion, the ALJ erred by discrediting Dr. Bickle's first opinion because it "is still directly contrary to the ALJ's RFC finding." (Doc. 16 at 12.) However, even if reliance on Plaintiff's subjective symptoms is only a sufficient reason to discount the second report, as detailed below, the ALJ gave an independent reason supported by substantial evidence for giving Dr. Bickle's opinions in his first report little weight.

Second, the ALJ asserted that Dr. Bickle's opinions were "inconsistent overall with the objective medical evidence of the record." (AR 23.) Specifically, as the ALJ noted, many of Dr. Bickle's treatment notes reflect consistently normal examination results. (*See, e.g.*, AR 302-04, 316-18, 416-22.) Dr. Bickle repeatedly found Plaintiff's symptoms to be "unremarkable." (*Id.* at 302, 318.) Dr. Bickle also found "overall

---

[2] Plaintiff argues that the ALJ did not give "clear and convincing reasons" to reject the opinions of the two treating physicians. But, the "clear and convincing reasons" standard is to be used when a doctor's opinion is not contradicted by that of another doctor. *Lester*, 81 F.3d at 830. Here, as stated above, the opinions of Dr. Bickle and Dr. Grove are contradicted by the opinions of Dr. Sauer and Dr. Ballard. (AR 21-24, 80-81, 96-97.) Therefore, the ALJ was only required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Bickle's and Dr. Grove's opinions. *Garrison*, 759 F.3d at 1015.

- 7 -

[Plaintiff] is doing well." (*Id.* at 303.) As to Plaintiff's hypertension, hyperlipidemia, and diabetes, Dr. Bickle noted "he [was] doing fairly well with that." (*Id.* at 316.)

Plaintiff argues that "[t]he medical evidence of record establishes a long history of cervical, lumbar and thoracic pain" on which Dr. Bickle relied. (Doc. 16 at 13.) Plaintiff also argues that "[r]adiology evidence supports the limitations offered by the treating physicians," and that "Plaintiff's insomnia, fatigue and difficulty sleeping is also well noted in his medical records." (*Id.*) Even though Plaintiff can point to some objective evidence in the record that Dr. Bickle used to diagnose Plaintiff's impairments, the ALJ sufficiently cited to and discussed on inconsistencies between Dr. Bickle's treatment records and his opinions. *See Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between a doctor's medical opinion and treatment notes is a specific and legitimate reason to discount that doctor's opinion).

Based on this record, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Bickle's opinions.

### iii. The ALJ erred in rejecting the opinions of treating physician, Dr. Grove.

The Court finds, however, that the ALJ erred in rejecting Dr. Grove's opinions regarding Plaintiff's limitations without providing specific and legitimate reasons supported by substantial evidence. Dr. Grove treated Plaintiff from February 12, 2013 through July 1, 2013, as his pain management specialist. (AR 359-63, 384, 406-10.) On June 17, 2013, Dr. Grove completed a Lumbar Spine Questionnaire. (*Id.* at 359-63.) Dr. Grove opined that: (1) Plaintiff can continuously sit or stand for only 30 minutes at one time; (2) Plaintiff can either sit or stand/walk for about two hours total each in an eight-hour work day; (3) Plaintiff needs to walk every 30 minutes for five minutes; (4) Plaintiff will need to take an unscheduled break from between one to 15 times for 10 to 30 minutes each; (5) Plaintiff can occasionally[3] lift and carry 10 pounds; (6) Plaintiff can use his bilateral upper extremities 30 percent of the time during an eight-hour work day for

---

[3] The form used by Dr. Grove defines "occasionally" as "less than 1/3 of the working day." (AR 409.)

- 8 -

1 grasping, turning and twisting objects; (7) Plaintiff can occasionally twist, but could never stoop (bend), crouch, climb stairs, or climb ladders; and (8) Plaintiff would miss work more than twice each month. (*Id.*)

Dr. Grove's opinions are contradicted by the opinions of agency, non-examining physicians, Dr. Sauer and Dr. Ballard. (*Id.* at 21-22, 80-81, 96-97.) Therefore, the ALJ could discount Dr. Grove's opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31; *Garrison*, 759 F.3d at 1015.

The ALJ gave Dr. Grove's opinions little weight for the following reasons: (1) his opinions are not supported by objective medical evidence, in that the medical evidence shows Plaintiff's conditions were managed with conservative treatment; (2) his opinions are inconsistent with his treatment notes; (3) his opinions provide little discussion of any medical findings that support the limitations opined; (4) his opinions are inconsistent with Plaintiff's reports regarding his daily activities, including an ability to play golf; and (5) his opinions appear to rely on statements from Plaintiff. (AR 22-23.)

The Court finds that the ALJ's treatment of Dr. Grove's opinions is not supported by substantial evidence. First, the ALJ asserted that Dr. Grove's opinions were not supported by objective medical evidence, including his treatment notes, that showed Plaintiff's conditions were managed with conservative treatment. (*Id.* at 22-23.) However, unlike Dr. Bickle's treatment records, Dr. Grove's treatment records document Plaintiff's reported constant, radiating pain aggravated by prolonged standing, sitting, lying down, and exercise, a pain level ranging from 6 to 9 out of 10, fatigue, insomnia, and tiredness, limitations in his daily activities, ability to exercise, and ability to sleep, and a slow and cautious gait. (*Id.* at 365-84.) Records also document moderate tenderness in his spine, moderately impaired range of motion, and spasticity in his muscle tone. (*Id.*) Those same records indicate that while there has at times been relief and improvement, Plaintiff's pain becomes more severe randomly throughout the day and night. (*Id.*) Dr. Grove's records also document, on at least one occasion, medication side effects of fatigue and sedation, which the ALJ references in his decision but does not

appear to fully consider. (*Id.* at 18, 376.) Likewise, the ALJ references some of Dr. Grove's findings but does not sufficiently explain why they are insufficient to support Dr. Grove's opinions. The ALJ is correct that Dr. Grove's notes document improvement and at times "some" or "significant" pain relief, which undercut Dr. Grove's opinions to some extent, but the ALJ failed to sufficiently discuss the portions of the notes that document significant symptoms. Further, some improvement does not necessarily contradict the limitations opined. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (some improvement does not mean impairment no longer severely affects a plaintiff's ability to function in a work environment which is why observations must be made in context of the overall diagnostic picture); *Lester*, 81 F.3d at 833 (occasional periods where a plaintiff is symptom-free is not inconsistent with disability).

Additionally, although the ALJ found that Plaintiff did not seek additional treatment beyond medication, as the ALJ noted, there is some reference in the record to Plaintiff's inability to pay for additional treatment. (AR at 21.) The ALJ failed to fully consider or evaluate Plaintiff's ability to pay for treatment during the relevant period, and it is unclear from the record the extent to which Plaintiff's financial status impacted his treatment. *Gamble v. Chater*, 58 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.").

The ALJ also relied on findings by Dr. Duane Pitt, orthopedic surgeon. (AR 21.) Although the ALJ noted normal results found by Dr. Pitt, Dr. Pitt examined Plaintiff on one occasion and, importantly, did not opine as to Plaintiff's functional limitations. (*Id.* at 355-57.) Therefore, the Court does not find these records, alone, a sufficient basis on which to give minimal weight to Dr. Grove's opinions.

Second, the ALJ asserted that Dr. Grove's opinions "include little discussion of what objective findings support the restrictions." (*Id.*) However, as detailed above, Dr. Grove's treatment records document Plaintiff's consistent reports of pain, which worsened with physical activity, and fatigue, tiredness, and insomnia. Further, Dr. Grove

conducted physical exams showing moderate impairments in range of motion and tenderness. Therefore, the Court finds that this reason is not supported by substantial evidence.

Fourth, the ALJ asserted that Dr. Grove's opinions are inconsistent with Plaintiff's reports regarding his daily activities. The ALJ noted that Plaintiff "remains independent in his care and living" and is "active," including regularly spending time with others, golfing, shopping, driving, and attending to his personal care. (*Id.* at 23.) However, the ALJ failed to make any finding regarding the amount of time Plaintiff spends a day doing the activities listed. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled."). Further, with regard to playing golf, Plaintiff states that he is able to play a short game (nine holes), with a very short swing, which may contradict some of Dr. Grove's opinions, but does not necessarily contradict all of them. (AR at 18, 255-63.) Therefore, the Court does not find Plaintiff's daily activities are a sufficient basis for giving Dr. Grove's opinions minimal weight.

Finally, the ALJ gave Dr. Grove's opinions little weight because they appear to rely on statements from Plaintiff. (AR 22-23.) However, the ALJ failed to cite to record evidence to support this finding. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (finding insufficient the ALJ's rejection of the doctor's opinion for relying on the plaintiff's own subjective reports because the ALJ "failed to give specific, clear, and convincing reasons" for doing so); *Thomas*, 278 F.3d at 957 (finding that "the ALJ may reject the opinion of a treating physician . . . if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.") (citation and internal quotation marks omitted). And, as detailed above, Dr. Grove conducted physical examinations at each appointment. Therefore, the Court does not find this reason to be supported by substantial evidence.

### b. Remand for further proceedings is appropriate.

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision.[4] The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening."). The Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to an award of benefits only if there are no "outstanding issues [in the record] that must be resolved" and "it is clear from the record that the ALJ would be required to find the claimant disabled were [the improperly rejected] evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The Court finds the "credit-as-true" rule is not met here. As noted above, although the ALJ's treatment of Dr. Grove's opinions is not supported by substantial evidence, there are clinical findings and other records that may undercut the limitations he opined. On remand, the ALJ will have the opportunity to obtain additional medical opinion and record evidence as appropriate. Further, it is not entirely clear based on this record

---

[4] Plaintiff also argues that the ALJ erred in failing to incorporate work limitations into the RFC based on Plaintiff's fatigue and insomnia, and in failing to consider Plaintiff's work history. Because the Court has found error with regard to the ALJ's treatment of Dr. Grove's opinions, the Court does not address those additional issues here.

- 12 -

whether the ALJ would be required on remand to find Plaintiff disabled even if Dr. Grove's opinions were credited as true. (*See* AR 68-70.) Notably, while Plaintiff's attorney asked the ALJ hypotheticals regarding the limitations opined by Dr. Bickle, including that Plaintiff must take a 15-minute break every hour, Plaintiff is off-task for 25 percent of the day, and that Plaintiff would miss four days of work a month (AR 69-70), Dr. Grove did not opine those specific limitations. (*Id.* at 359-63.) And, there is some evidence in the record that causes this Court serious doubt as to whether Plaintiff is disabled, including Plaintiff's comment to his treating provider regarding his ability to perform the functions of his past work with some lifting limitations, which was not discussed by the ALJ. (*See id.* at 316) (Plaintiff reported that he was "doing okay working his job at Desert Force Golf Club and was recently let go of that job in April 2012 by new management. Patient notes that he was able to do the qualifications of that job with some light lifting, but had difficulty moving heavy objects."). (*See also id.* at 355) (noting that Plaintiff "is no longer working now, due to the fact that he was laid off from the golf club that he was working at just recently").

For these reasons, the Court finds that remand for further proceedings is appropriate. The Court will therefore remand this matter for a de novo hearing in which the ALJ considers all evidence of record and makes a new determination regarding whether Plaintiff is disabled. *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) ("If such outstanding issues do exist, the district court cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings."); *see also Brown-Hunter*, 806 F.3d at 496 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is vacated and remanded for further proceedings consistent with this Order.

///

///

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and terminate this matter.

Dated this 31st day of March, 2017.

Honorable John Z. Boyle
United States Magistrate Judge